# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>    ERIC KLUTKE,<br><br>        Debtor. | Chapter 7<br><br>Case No. 17-14086 |
| FIRST MIDWEST BANK,<br><br>        Plaintiff,<br><br>v.<br><br>ERIC KLUTKE,<br><br>        Defendant. | Honorable A. Benjamin Goldgar<br><br>Lake County<br><br>Adv. Pro. No.: _____ |

## **COMPLAINT TO OBJECT TO DISCHARGE OF DEBT**

FIRST MIDWEST BANK N.A. ("FMB") by its counsel Carlson Dash, LLC, for its complaint against debtor Eric Klutke (the "Debtor") pursuant to 11 U.S.C. § 727, alleges:

### **Parties and Jurisdiction**

1. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. Venue is proper here pursuant to 28 U.S.C. § 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

2. The statutory basis for this complaint is 11 U.S.C. § 727

3. FMB is an Illinois state bank and has offices throughout Illinois.

4. The Debtor is an individual and resident of Illinois.

### **Background Allegations**

5. At all relevant times referenced in this Complaint, the Debtor served as the Vice-President of GKI, Inc. Among other roles, the Debtor was a principal of GKI and managed GKI's factory and oversaw the employees purchasing related to the operations of GKI's factor.

6. Additionally, the Debtor owned 41% of the outstanding stock of GKI, Inc. The remaining stock of GKI, Inc. was owned by his brother and mother.

7. On March 3, 2015, GKI, Inc. executed a promissory note ("Note 1") in favor of FMB in the original principal amount of $560,000.00. A copy of Note 1 is attached as **Exhibit A**. Note 1 was modified by a Change in Terms Agreement dated April 27, 2016 which, among other things, extended the maturity date of Note 1 to June 1, 2016. A copy of the Change in Terms Agreement is attached as **Exhibit B**.

8. On November 1, 2013, GKI, Inc. and a related entity, executed a promissory note ("Note 2") in favor of FMB in the original principal amount of $470,848.91. Note 2 matured on June 1, 2016. A copy of Note 2 is attached as **Exhibit C**.

9. On October 24, 2011, GKI, Inc. executed a promissory note ("Note 3") in favor of FMB in the original principal amount of $148,000.00. A copy of Note 3 is attached as **Exhibit D**. Note 1, Note 2 and Note 3 are collectively referred herein as the "Notes".

10. The Notes are secured by a security agreement executed by GKI which grants FMB a security interest, in among other things, all of the Borrower's equipment, inventory and accounts (the "Collateral").

11. On June 10, 2011, FMB's interest in the Collateral was perfected by the filing of a UCC Financing Statement was filed with the Illinois Secretary of State. A continuation statement was filed on May 11, 2016.

12. The Debtor executed a commercial guaranty (the "Guaranty") in favor of FMB whereby he guaranteed all indebtedness owed by GKI, Inc. to FMB. A copy of the Guaranty is attached as **Exhibit E**.

13. On September 15, 2016, GKI filed its petition for relief under Chapter 11 of the Bankruptcy Code. GKI's bankruptcy was filed in the Northern District of Illinois, Western Division as Case No. 16-82168.

14. On September 19, 2016, GKI filed its Emergency Motion Seeking the Use of Cash Collateral and Authorizing Payment of Wages to Employees and Honor Other Employee' Obligations (the "Motion").

15. The Motion acknowledges that FMB had a lien on GKI's cash collateral.

16. On September 20, 2016, on one-day notice, GKI was granted an Order Granting Debtor's Emergency Motion to Authorize Interim Use of Cash Collateral and Granting Related Relief and Setting Further Hearing (the "Interim Cash Collateral Order"). The Interim Cash Collateral Order allowed for GKI to use cash collateral through October 7, 2016.

17. On September 30, 2016, FMB filed its objection to GKI's continued use of cash collateral.

18. On October 7, 2016, a hearing was held on GKI's continued motion seeking the use of cash collateral.

19. On October 7, 2016, the Honorable Judge Thomas Lynch of the Bankruptcy Court for the Northern District of Illinois, Western Division entered an order denying the GKI's continued motion to use cash collateral but allowed GKI to pay up to $30,000.00 for strictly payroll expenses. The order specifically provided that the $30,000.00 could not be used to pay management or equity holders of GKI. A copy of the October 7, 2016 order is attached hereto as **Exhibit F**.

20. The Debtor was present in court on October 7, 2016 for the Court's decision denying the use of cash collateral.

21. No further order was entered allowing GKI to use any cash collateral.

22. On November 21, 2016, GKI filed its monthly operating report for the month of October (the "October Operating Report"). A copy of the October Operating Report is attached as **Exhibit G**.

23. The October Operating Report revealed, despite the bankruptcy court's October 7, 2016 Order, GKI continued operating as if it had the full unimpaired use of Cash Collateral.

24. After the October 7, 2016 Order, with full knowledge of the prohibition against using cash collateral and despite the bankruptcy court's specific instructions otherwise, the Debtor continued to obtain payments from GKI.

25. The Debtor, despite being an insider took no actions to insure compliance with the October 7, 2016 Order.

26. Additionally, the Debtor oversaw and continued to operate GKI's factory and the purchasing which went with such operation, in violation of the bankruptcy code and the court's ruling prohibiting the use of cash collateral.

27. On November 23, 2016, in response to motions from FMB and the United States Trustee, the court converted GKI's bankruptcy case to one proceeding under Chapter 7 of the Bankruptcy Code.

28. On the same day as the conversion of GKI's bankruptcy, Bernard Natale was appointed as the Chapter 7 Trustee for GKI's bankruptcy.

29. On the day of the conversion, or shortly thereafter, the Debtor became aware that the case was converted.

30. Included in the November 23, 2016 order was an injunction against the management, principals and insiders of GKI from removing any assets of GKI.

31. When GKI's principal place of business was visited by the Chapter 7 Trustee, GKI's server was missing. The server contained customer information, including information about accounts receivable, that was necessary for the Chapter 7 Trustee to administer the estate and for FMB to recover its the Collateral.

32. On information and belief, the Debtor, on or around the time of the conversion, either assisted in removing GKI's server from its principal place or was aware of its removal.

33. GKI's server was taken to the Debtor's brother's house.

34. The Debtor did not initially disclose to FMB or the Chapter 7 Trustee that his brother was in possession of the server.

35. Only after demand from the Chapter 7 Trustee was the server returned.

36. The server was not produced to the Chapter 7 Trustee for over six weeks after it was removed from GKI's offices.

37. During the time it was in his brother's possession, information was removed from the server.

38. After its return, the contents of the server were inspected by a former employee of GKI who was assisting the Chapter 7 Trustee.

39. During the time that the Debtor's brother was in possession of the server, certain information regarding GKI's business and specifically its customers, were removed from the server.

40. The deleted information was never returned to GKI or the Chapter 7 Trustee.

### COUNT I
### Objection to Discharge pursuant to 11 U.S.C. § 727(a)(7) and 727 (a)(6)

41. Plaintiff incorporates by reference the allegations contained in paragraphs 1-40 above as though more fully restated herein.

5

42. The Debtor was an insider of GKI, Inc. during the one year before the date of filing his bankruptcy case.

43. During the pendency of GKI's bankruptcy and during the year before the date of filing of this bankruptcy case, the Debtor repeatedly failed to obey the bankruptcy code and the lawful orders of the bankruptcy court in GKI Inc.'s bankruptcy case in relation to the GKI's continued use of cash collateral and the Debtor's continued receipt of funds from GKI after the October 7, 2017 Order.

44. The Debtor's refusal was unrelated to an order to a respond to a material question to testify.

WHEREFORE, First Midwest Bank respectfully requests that this Court deny Eric Klutke a discharge and for whatever further relief this Court deems just and equitable.

### COUNT II
### Objection to Discharge pursuant to 11 U.S.C. § 727(a)(7) and 727 (a)(2)

44. Plaintiff incorporates by reference the allegations contained in paragraphs 1-39 above as though more fully restated herein.

45. The Debtor was an insider of GKI, Inc. during the one year before the date of filing his bankruptcy case.

46. The Debtor, as insider of the GKI, during the year proceeding the filing of this bankruptcy, knowingly either transferred, removed or concealed or permitted the transfer, removal or concealment of property of GKI's bankruptcy estate.

WHEREFORE, First Midwest Bank respectfully requests that this Court deny Eric Klutke a discharge and for whatever further relief this Court deems just and equitable.

### COUNT III
### Objection to Discharge pursuant to 11 U.S.C. § 727(a)(7) and 727 (a)(4)

47.  Plaintiff incorporates by reference the allegations contained in paragraphs 1-39 above as though more fully restated herein.

48.  The Debtor was an insider of GKI, Inc. during the one year before the date of filing his bankruptcy case.

49.  The Debtor, as insider of GKI, during the year proceeding the filing of this case knowingly and fraudulently withheld from an officer of GKI's estate entitled to possession, recorded information relating to GKI's property or financial affairs.

WHEREFORE, First Midwest Bank respectfully requests that this Court deny Eric Klutke a discharge and for whatever further relief this Court deems just and equitable.

### COUNT IV
### Objection to Discharge pursuant to 11 U.S.C. § 727(a)(7) and 727 (a)(3)

50.  Plaintiff incorporates by reference the allegations contained in paragraphs 1-39 above as though more fully restated herein.

51.  The Debtor was an insider of GKI, Inc. during the one year before the date of filing his bankruptcy case.

52.  The Debtor, as insider of GKI, concealed recorded information regarding GKI's financial condition or business condition might be ascertained.

53.  The Debtor's actions were not justified under the circumstances of the case.

WHEREFORE, First Midwest Bank respectfully requests that this Court deny Eric Klutke a discharge and for whatever further relief this Court deems just and equitable.

### COUNT V
### Objection to Discharge pursuant to 11 U.S.C. § 727(a)(7) and 727 (a)(2)

54.  Plaintiff incorporates by reference the allegations contained in paragraphs 1-39 above as though more fully restated herein.

55. The Debtor was an insider of GKI, Inc. during the one year before the date of filing his bankruptcy case.

56. The Debtor assisted in preparing the Schedules and Statements of Financial Affairs for GKI.

57. The Debtor was aware that GKI was the named insured under a policy issued by Hanover Insurance Company.

58. Among other things, the policy insured the actions of GKI's directors and officers, including the Debtor.

58. On information and belief, the Debtor intentionally and fraudulently failed to reveal the existence of the policy in the Schedules and Statement of Financial Affairs.

59. Additionally, on information and belief, the Debtor, intentionally failed to informed the Chapter 7 Trustee, Bernard Natalie of the existence of the policy.

60. On information and belief, shortly after conversion of GKI's case, the claims period stated in the policy lapsed.

61. The Debtor, as insider of the GKI, during the year proceeding the filing of withheld and concealed from an officer of GKI's estate entitled to possession, recorded information relating to GKI's property or financial affairs.

WHEREFORE, First Midwest Bank respectfully requests that this Court deny Eric Klutke a discharge and for whatever further relief this Court deems just and equitable.

        **FIRST MIDWEST BANK**

        By: /s/ Martin J. Wasserman
           One of its attorneys

Kurt M. Carlson ARDC #6236568
Martin J. Wasserman ARDC #6294040
CARLSON DASH, LLC
216 S. Jefferson St., Suite 504

Chicago, IL 60661
Telephone: (312) 382-1600
Email: kcarlson@carlsondash.com
Email: mwasserman@carlsondash.com